1                UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS

3                          No. 1:14-cv-10943-WGY

4

5    GEORGE J. VENDURA, JR.,
            Plaintiff
6
     vs.
7

8
     JONATHAN BOXER, et al,
9            Defendants

10

11                      * * * * * * * * *

12
                    For Hearing Before:
13              Judge William G. Young

14
                  Case-stated Hearing
15

16              United States District Court
                District of Massachusetts (Boston)
17              One Courthouse Way
                Boston, Massachusetts 02210
18              Thursday, May 28, 2015

19
                        * * * * * * * *
20

21
             REPORTER: RICHARD H. ROMANOW, RPR
22               Official Court Reporter
                United States District Court
23      One Courthouse Way, Room 5510, Boston, MA 02210
                  bulldog@richromanow.com
24

25

```
 1                    A P P E A R A N C E S

 2

 3   STEPHEN D. ROSENBERG, ESQ.
        The Wagner Law Group
 4      99 Summer Street, 13th Floor
        Boston, MA 02110
 5      (617) 357-5200
        Email: Srosenberg@wagnerlawgroup.com
 6      For Plaintiff

 7

 8   SAMUEL P. MYLER, ESQ.
        Mayer Brown, LLP
 9      71 S. Wacker Drive
        Chicago, IL 60606
10      (312) 701-8461
        Email: Smyler@mayerbrown.com
11      For Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1          P R O C E E D I N G S
2          (Begins, 9:05 a.m.)
3          THE CLERK:  Now hearing Civil Matter 14-10943,
4   Vendura versus Boxer, et al.
5          THE COURT:  Good morning.  And would counsel
6   identify themselves and who they represent.
7          MR. ROSENBERG:  Good morning, your Honor, Stephen
8   Rosenberg for the plaintiff, George Vendura.
9          MR. MYLER:  Sam Myler on behalf of the defendants.
10         THE COURT:  Very well.
11         Let me simply rehearse the procedural history so
12  we are all in agreement.  The Court is prepared to hear
13  this matter as a case-stated.  The parties agree that
14  the record is before the Court and the Court may draw
15  reasonable inferences from the record as it is before
16  the Court.  In essence then this is the final argument
17  upon a submitted record, and I will give the parties the
18  normal one half hour, though I don't invite one half
19  hour per side, for final argument.
20         So agreed for the plaintiff, Vendura?
21         MR. ROSENBERG:  Yes, your Honor.
22         THE COURT:  And for the defense?
23         MR. MYLER:  That's agreed, your Honor.
24         THE COURT:  All right.
25         This is the -- I follow the Massachusetts
```

1    procedure where the plaintiff does bear the burden of

2    proof, so we'll let the plaintiff argue last and we'll

3    hear first from the defense.

4        MR. MYLER:  Your Honor, very briefly one

5    procedural question regarding this case-stated hearing.

6        THE COURT:  Yes.

7        MR. MYLER:  If the defense argues first, I assume

8    that that means the defense can reserve time for a reply

9    or a written --

10        THE COURT:  No, it does not.  It's one half hour a

11    side.  But I do want the procedure clear.

12        The great likelihood is that I'm going to take

13    this under advisement.  I'm prepared for argument.  I'm

14    familiar with the case.  But this is not one where I'm

15    going to grant -- my duty now is to make findings and

16    rulings, although the findings are on a stipulated

17    record.  So you're entitled to an opinion.  I'm not

18    prepared to give one from the bench.  I didn't come out

19    here with that in mind.  And therefore, if after

20    argument you want to submit further briefing, I will

21    entertain it simply because I am happy to get all the

22    help I can.  But I do not require it.

23        So it's one half hour a side.  The plaintiff goes

24    last.  I'll hear from the defense.

25        MR. MYLER:  I appreciate that, your Honor.  Thank

1    you.

2         So as I mentioned, my name is Sam Myler and I'm

3    here on behalf of the defendant.

4         It's the defendant's position that this is a

5    relatively simple ERISA Section 502(a)(1)(B) case and

6    that the Court should affirm the plan administrator's

7    decision to deny plaintiff's 20 years of benefit service

8    under the plan and a lump sum benefit payment.

9         My argument for this position essentially has

10   three parts, your Honor.  The first is just identifying

11   and kind of pinning down the standard of review.  There

12   was some dispute between the parties in the briefing

13   with respect to the standard of review.  The second part

14   of the argument is just an overview of the plan

15   administrator's initial decision and an explanation as

16   to why that decision was reasonable.  And then finally I

17   will address the various arguments offered by the

18   plaintiff, um, for why the plan administrator's decision

19   was incorrect.

20        So with respect to the first part, the standard of

21   review, as the Court's well aware -- the Court is

22   sitting in essentially the position of an appellate

23   tribunal, um, and its task is simply to review the plan

24   administrator's decision, but that, however, begs the

25   question as to what the standard of review is of the

1  plan administrator's decision.

2      The Supreme Court, over 25 years ago, in the

3  *Firestone* case*,* said the default standard in this type

4  of ERISA case is going to be a de novo standard, however

5  they came out in that case and they said that the

6  standard is an abuse of discretion standard if the plan

7  sponsor or the employer simply provides as such in the

8  plan.  Here we have a plan where the plan sponsor,

9  Northrop Grumman, has clearly vested the plan

10  administrator with the discretionary authority to not

11  only decide claims but to also interpret the plan.

12      The discretionary language says that the plan

13  administrator has the sole and exclusive authority to

14  interpret the plan, decide claims, resolve any factual

15  disputes that may arise, and plaintiffs don't dispute

16  that this language that's set forth in the plan is

17  sufficient in general to confer adequate discretion on a

18  plan administrator, however they make a few arguments

19  that in this case, under these specific facts, there is

20  something, there's some sort of less deferential

21  standard or the deferential standard doesn't apply.

22      THE COURT:  Because they are the ones who make the

23  determination, but they're also on the hook for paying

24  the benefits?

25      MR. MYLER:  Well, your Honor, I don't believe that

1    that was the thrust of plaintiff's argument.  They do

2    note in a footnote that there is some sort of structural

3    conflict of interest, I believe it was in a footnote in

4    their opening brief, but I don't see them having

5    developed that argument at all.

6         The fact that they're -- well, to be clear the

7    person on the hook for paying the benefit is a trust.

8    Northrop Grumman has put that money into the trust.  The

9    trust is administered by a committee.  Now that

10   committee admittedly is comprised of individuals who

11   were appointed by Northrop Grumman, but the law is clear

12   that that does not, in and of itself, create some

13   insurmountable conflict, the committee members

14   understand and under ERISA they had an obligation to

15   administer this trust and decide claims consistent with

16   their fiduciary duty and when they're doing that they're

17   acting as fiduciaries for the plaintiff and for all the

18   plan participants and then they have their obligations

19   for Northrop Grumman.

20        THE COURT:  And your position is that this is not

21   a surprising arrangement, it's a routine arrangement,

22   and the abuse of a fiduciary's discretion is the test.

23        MR. MYLER:  Exactly.

24        THE COURT:  Fiduciaries are held to the highest --

25   what's the language in the cases, "a punctilio of

```
 1   fidelity and the like"?
 2        MR. MYLER:  Exactly.
 3        THE COURT:  But having said that, unless they fail
 4   in that, the Court is expected to view their actions
 5   under an abuse-of-discretion standard.
 6        MR. MYLER:  I would -- generally I would say that
 7   is correct, your Honor.  I would make one clarification.
 8   The point with respect to their fiduciary duties --
 9   those fiduciary duties are only really implicated when
10   there is a breach-of-fiduciary-duty claim, not simply a
11   determination as to whether an individual is entitled to
12   benefits.  When they're making a determination as to
13   whether someone's entitled to benefits, they don't have
14   to decide the issue in a manner that is most, um, you
15   know, that has the participant's best interest at heart,
16   they're to decide that based simply on the terms of the
17   plan.
18        Now, when it comes to making smart investment
19   decisions with this pension trust fund or --
20        THE COURT:  In other words, there's been some
21   recent law on that, but this doesn't challenge their
22   investment decisions?
23        MR. MYLER:  Or any fiduciary matters.
24        THE COURT:  This is -- I understand that this is a
25   payment-of-benefits issue.  I understand that.
```

1        MR. MYLER:  Exactly, essentially a breach of that.

2        THE COURT:  Did he get any other compensation for

3   his patents other than these long-term disability

4   payments?

5        MR. MYLER:  That is something that I can't answer.

6   There's no indication based on the administrative

7   record.  And obviously we're limited to this that there

8   was some sort of compensation for these patent awards.

9   I don't know what patents there were or if there was

10   some sort of award at any point.  I would say plaintiff

11   hasn't raised it, you know hasn't submitted any evidence

12   that there were such payments or that those payments are

13   necessarily material.

14        So the plaintiff offers a couple of arguments as

15   to why the standard of review shouldn't be abuse of

16   discretion, one of which is that this involved the

17   interpretation of some -- of an extra plan document,

18   specifically the settlement agreement entered into in

19   2003.  The plaintiff's position that simply interpreting

20   this extra plan document renders the entire claims

21   procedure subject to de novo review and that's simply

22   not the case, your Honor.  If that were true then the

23   plaintiffs or participants could submit any sort of

24   irrelevant miscellaneous document and argue that they're

25   entitled to benefits under it and -- and claim that the

1    entire administrative procedure is subject to de novo

2    review.

3          THE COURT:  When you say that that's not the case,

4    what you mean is that's not the law?

5          MR. MYLER:  That's not the law.

6          THE COURT:  All right.

7          MR. MYLER:  And it can't be the law.  It would

8    make no sense.

9          The plan also argues that there was an ineffective

10   delegation of authority to someone other than the plan

11   administrator to decide this claim.  While there's some

12   law to support the fact that if you -- if someone other

13   than the plan administrator decides a claim, in order

14   for that person to be availed of the abuse of discretion

15   standard there needs to be an effective delegation.  The

16   problem with this argument is that the premise is

17   incorrect, there is no delegation in this case.  The

18   appeal denial, the administrative appeal denial, was

19   decided by the Northrop Grumman administrative committee

20   who under the plan is identified as the plan

21   administrator and it was presented, the plan, through

22   the secretary for the committee.  Now, the plaintiff

23   doesn't really identify who other than the committee

24   decided the claim, it may be that they're taking the

25   position that the secretary decided the claim, but the

1    final appeal denial letter, if we were to take a look at

2    it, makes clear that the committee decided the claim,

3    the secretary for the committee was just the

4    spokesperson or the mouthpiece, and the committee

5    obviously can't speak for itself, it needs to appoint

6    someone to speak on its behalf.

7            So just to be clear, your Honor, it's the

8    defendants' position, and this wraps up the first part

9    of my argument, that the abuse-of-discretion standard

10   does apply in this case, it applies to the plan

11   administrator's interpretation of the plan, and

12   therefore it's the plaintiff's burden to establish that

13   not only was this -- it was the plaintiff's burden to

14   establish not only was their interpretation of the

15   finding correct, but that it was -- that it stretched

16   beyond the bounds of reasonableness.  It's not enough to

17   obviously offer a competing interpretation and the plan

18   administrator's decision doesn't need to be the best

19   decision.  So then I'd just like to give a brief

20   overview of the plan administrator's decision, and this

21   is the second part of my argument.

22           This case is, as your Honor I'm sure is aware, is

23   all about the interpretation of the plan provisions

24   related to the accrual of benefit service under

25   Northrop's pension plan.  Obviously the accrual benefit

1    service is important because it's part of the formula

2    for calculating the amount of pension, the more benefit

3    service you're able to accrue over the course of

4    employment, the higher your monthly pension's going to

5    be.

6         There's this related issue as to the lump sum but

7    the plaintiff had -- the plaintiff does not dispute

8    that, that necessarily follows the benefit service

9    question.  Therefore, if plaintiff was not approving

10   benefit service up until 2013 when he submitted his

11   request for the lump sum, he's not entitled, under the

12   plan administrator's interpretation, to this lump sum.

13   So it necessarily kind of follows this question as to

14   the benefit service.

15        So when the plaintiff -- so in order to determine

16   benefit service, this is set forth in -- and if you give

17   me a moment, I'll turn to it, um, in Section 2.02 of the

18   plan, and under this section this is essentially the war

19   and everyone in it revolves around the interpretation of

20   this section.

21        So under this section it provides that a

22   participant's benefit service is equal to the number of

23   months in which they satisfy one of the conditions set

24   forth in its subparts.  It had seven subparts.  One, for

25   example, (A) is the receipt of compensation from the

1     control group for the performance of services.  This is

2     the traditional idea of work, that if an individual is

3     working they're accruing benefit service.

4          In 2013 when the plaintiff retired, he submitted

5     his application for a pension and the plan administrator

6     looked and looked at his employment history and made the

7     following determination.  She decided that -- she found

8     that between 1993 and 2000 the plaintiff worked for a

9     predecessor to Northrop Grumman Corporation, TRW,

10    Incorporated, and so during that 7-year period he was

11    actively working.  In June of 2000 he began a period of

12    long-term disability and he went out on a long-term

13    disability, was receiving long-term disability benefits,

14    and that period continued all the way up until 2013.

15    When those benefits were exhausted in 2013, he submitted

16    his application for a pension.

17         Based on this employment history the plan

18    administrator added up benefit service and she found

19    that under Subpart (A), for the period between 1993 and

20    2000, the plaintiff was obviously entitled to benefit

21    service, there was really no question there.  In 2000,

22    however, he begins this period of 13 years on long-term

23    disability.

24         The plan administrator looks to Subpart (C) of

25    this Section 2.02 and finds that, yes, individuals are

1    able to obtain benefit service while on long-term

2    disability, however if this period of long-term

3    disability begins after January 1, 2000, there's a

4    60-month maximum on the accrual.  So an individual who

5    is out on long-term disability indefinitely, 10, 15, 20,

6    30 years, could only get 60 months or 5 years if that

7    period of leave began after January 1, 2000.

8    Plaintiff's period of leave began in June of 2000,

9    that's not disputed by plaintiff.  Accordingly the plan

10   administrator applied this 60-month limitation.  So she

11   has awarded him an extra 5 years from June of 2002 to

12   June of 2005 and after that he wasn't accruing benefit

13   service anymore.  Well, that's the plan administrator's

14   decision in a nutshell.  And it's relatively simple

15   given the complexity of this claim.

16        THE COURT:  Well, how does this settlement figure

17   in here?

18        MR. MYLER:  Which leads to my third part, and

19   things got a little more complicated.

20        Plaintiff submits an administrative claim under

21   the plan, which ERISA requires the plan to include, and

22   the first argument he raises to the plan administrator

23   is that "That's all well and good about Section 2.02 and

24   the 60-month limitation, but none of that applies to me

25   because I am governed by this superseding and

1    extraordinary settlement agreement."  The plan

2    administrator looks at the settlement agreement and

3    correctly determines that the settlement agreement's

4    completely irrelevant, and that's a decision that we're

5    hoping the Court will affirm.

6         If you look at the settlement agreement, there's

7    nothing out on the face of it that states "The plaintiff

8    shall continue to accrue benefit service during all

9    periods of long-term disability."  In fact it expressly

10   states that the plaintiff's benefits, to the extent he's

11   entitled to them, shall just simply be determined by the

12   benefit plans of which he is a participant, and it

13   simply defers to the benefit plans.  It also states that

14   for a period prior to 2000 he'll be awarded benefit

15   service while he was on medical leave, but didn't say

16   anything about benefit service going forward, and

17   obviously they have contemplated the idea of plaintiff's

18   benefits or addressed it with respect to past periods of

19   leave, but didn't say anything about going forward,

20   simply deferred to the plan.  And so there's nothing on

21   the face of the settlement agreement to suggest that the

22   plaintiff has a special situation or should be exempt

23   from article -- or Section 2.02.

24         THE COURT:  Help me out.  What was -- I just want

25   you to rehearse it for me again.

1      How did this settlement agreement come about, what

2  was being settled there?

3      MR. MYLER:  That is a very good question.  You see

4  we're restricted to the administrative record.

5      THE COURT:  We are, we are, and yet -- all right,

6  we're in the same ballpark.  There's my question.

7      MR. MYLER:  Yes.  He -- so the plaintiff, in none

8  of its claims, explains why this was a settlement

9  conference.  The agreement itself appears to relate to

10  certain claims, um, related to his selection for layoff,

11  um, while TRW owned the company.  So there seems --

12  there appears to have been some sort of a dispute as to

13  why he was selected for layoff, whether it was

14  discriminatory, or what the reasons were, and this was a

15  settlement of that.

16      THE COURT:  It -- let me see if you'll agree to

17  this much.

18      From the record before me it would be a reasonable

19  inference that objecting to the TRW layoff, on various

20  civil rights grounds, age, disability, some civil rights

21  grounds, he entered into a settlement agreement.  We

22  have it.  We know what it says.

23      And you'd agree with that?

24      MR. MYLER:  Yes, he entered into a settlement

25  agreement.

1          THE COURT:  And I'm not trying to pressure you.

2          MR. MYLER:  Yes.

3          THE COURT:  So now if that's a reasonable

4    inference here, um, we have a settlement agreement and

5    we have the, um, ERISA decision, and your position is

6    that the -- that both are valid but neither one is in

7    conflict with the other?

8          THE COURT:  Exactly, your Honor.  There's nothing

9    incompatible about the two.  Individuals at companies

10   can settle all sorts of claims, it doesn't necessarily

11   mean they have any sort of relationship to benefit

12   plans.  And that's not necessarily to say they couldn't,

13   it's possible that they would, but there would be issues

14   about whether that person had authority to modify the

15   benefit plans for a certain individual, et cetera.  But

16   here there's just really no conflict in the first place.

17   Only if he tries to create one, um, through essentially

18   what is the second part of my argument with respect to

19   the settlement agreement, and that is that there was

20   some sort of implication through the settlement

21   agreement that his benefits would continue based on the

22   fact that it provided that he would remain at some sort

23   of employee, some sort of nominal employee.  But the

24   plan administrator --

25         THE COURT:  Well, in fact his benefits did

1    continue, it -- your point is that after the 5 years

2    that just doesn't count toward time in service?

3         MR. MYLER:  Exactly, your Honor.

4         THE COURT:  Which is your marker for determining

5    the -- whether it's a lump sum or a payout over time,

6    that's the marker for the amount of the retirement

7    benefit?

8         MR. MYLER:  Yes, and so the benefit service is

9    used to calculate the amount of the pension benefit.

10   And it also has kind of a subimportance, I suppose I

11   should say, in that to get a lump sum you need to be

12   accruing benefit service at the time you applied for the

13   lump sum.  So it not only calculates the amount of your

14   pension, but you need to be getting benefit service when

15   you apply for the lump sum under the plan to get the

16   lump sum.  So -- but to be clear, his benefit service

17   was not accruing under the settlement agreement between

18   2000 and 2005, it was accruing under the terms of the

19   plan.  The only benefits he was getting was --

20        THE COURT:  Well, the settlement agreement says

21   those benefits shall continue.

22        MR. MYLER:  The settlement agreement -- I don't

23   believe the settlement agreement says his benefits shall

24   continue, um, it simply says that he shall remain an

25   employee until his long-term disability benefits are

1   exhausted or one of five other conditions occur.  The

2   settlement agreement is essentially -- I'm not entirely

3   sure what the goal was here, it appears to defendants

4   that the goal was to allow him to continue as a

5   technical or nominal employee so that he can continue to

6   obtain long-term disability benefits.

7        THE COURT:  5 more minutes, just for your own

8   planning.

9        MR. MYLER:  Oh, I apologize.

10       So that's the argument with respect to the

11   settlement agreement.  The plan administrator also

12   determined that his employment status is irrelevant

13   under the plan and that's essentially one of maybe four

14   conditions that needs to be met.  And even if he's an

15   employee, that's a necessary condition, but it's clearly

16   not sufficient.  And, um, so that's the argument with

17   respect to the settlement agreement.

18       The other argument that plaintiff raised kind of

19   after the settlement agreement is that he's entitled to

20   benefit service under this other subpart which relates

21   to worker's compensation.  So he submitted an amendment

22   to his initial administrative claim and he said, "Oh,

23   well, I'm also entitled to continue benefit service

24   because under Subpart (B) I'm absent from work due to a

25   workplace injury and I have received -- I'm receiving

1   worker's compensation benefits."  The plan administrator

2   said, "Yes, it's true that" -- not that he's receiving

3   those things, but that "If you were to be receiving

4   worker's comp, you could continue to accrue benefit

5   service while you're on leave."  But the plan

6   administrator said that there's a provision here that

7   says, "However, that service credit shall be limited to

8   a maximum of 12 months unless the participant has met

9   the eligibility requirements for receiving long-term

10  disability benefits whether or not he actually received

11  such benefits."

12      So she essentially said, "Well, yeah, even if you

13  were getting service under this subpart, it doesn't

14  matter because you already got the 5 years under the

15  long-term disability, this 12 months isn't going to do

16  anything for you, it's kind of superseded by this 5

17  years you were getting under (C)."

18      The plaintiff argues that this limitation -- this

19  12-month limitation doesn't apply because he was

20  obtaining long-term disability benefits.  This could be

21  no other -- the only way to characterize this is as

22  somehow trying to create a loophole between the two

23  provisions.  Under (B) you get worker's comp up to 12

24  months -- if you're getting worker's comp, you get up to

25  12 months of benefit service.  Under (C), if you're

1   getting long-term disability, you get up to 60 months

2   benefit service.  And there's no reason why if you're

3   obtaining worker's comp but are eligible for long-term

4   disability, that all of a sudden you should have no

5   limitation at all.  And the plan administrator

6   determined that that interpretation or that issue was --

7   or that argument was just simply unreasonable, an

8   unreasonable interpretation of the plan.  And it's the

9   defendants' position that plaintiff hasn't carried their

10  burden of showing you that that interpretation of the

11  relationship between (B) and (C) was stretched beyond

12  the bounds of reasonableness so as to require the Court

13  to overturn the plan administrator's decision.

14      If you have no further questions, your Honor, that

15  will be my argument.

16      THE COURT:  Thank you, very much.

17      Mr. Rosenberg.

18      MR. ROSENBERG:  Thank you, your Honor.  It always

19  happens to me where I change my argument while listening

20  to the defense.

21      THE COURT:  I wouldn't call that a fault, that's

22  the argument that you're meeting.

23      MR. ROSENBERG:  Thank you, your Honor.

24      As a result, I want to start with a couple of

25  30,000-foot issues.  First of all, the standard of

1    review question.

2         The First Circuit has said, at least three times,

3    that when the plan administrator is granted discretion

4    but its determination relies on its legal determination

5    of contracts or legal standards or statutes that are

6    outside of the plan, discretion doesn't apply, and

7    essentially the reasoning is that for the Court is as

8    qualified, and certainly more so, and has as much power

9    to interpret that as does the plan administrator.

10        The settlement agreement, your Honor --

11        THE COURT:  So your point is not -- the way you

12   meet his point that simply because this is an extraneous

13   document, that's not what affects the standard of

14   review, that what affects the standard of review here,

15   in your view, is that it's a contract to be interpreted,

16   that's what courts do all the time, and I should do what

17   I always do, um, use normal contract interpretation,

18   match that against what the plan administrator did here.

19        Have I got your argument?

20        MR. ROSENBERG:  That's exactly right, your Honor,

21   it's a substantial legal interpretation issue that

22   belongs to the court.

23        THE COURT:  Without adopting it, I do understand

24   that argument.

25        Go ahead.

1          MR. ROSENBERG:  So that's the primary reason why

2     arbitrary and capricious review doesn't apply here.

3          Now, the settlement agreement, as the Court

4     touched upon, is actually an agreement entered into by

5     the plan sponsor with the plaintiff, it specifically

6     references the benefit plan, talks about how it will be

7     integrated, says that in the place of a conflict, the

8     agreement will govern.  So this is clearly deliberately

9     tied by the plan sponsor to the plan, it's central to

10    any interpretation they can make here, and thus that

11    rule places it within de novo review.

12          Separately I simply want to point out that even if

13    arbitrary and capricious review did apply, the

14    defendants are making the same argument that defendants

15    always make, which is "As long as we're reasonable,

16    that's good enough," but likewise when you're talking

17    about plan interpretation the First Circuit has made

18    clear that's not the standard, you don't win just

19    because you're reasonable, under all the facts and

20    circumstances you still have to be tied to the language

21    and it still has to be an accurate interpretation of the

22    plan language, and that follows naturally from ERISA

23    itself which obligates the fiduciaries and the plan

24    administrators to apply the terms of the plan.  And so

25    what we'll see when we talk about these plan terms is

 1    that their arguments and their interpretation don't

 2    actually fit the terms.  So for that reason, even if it

 3    was an arbitrary and capricious standard --

 4         THE COURT:  You're in agreement though that the

 5    key language is this section, 2.02?

 6         MR. ROSENBERG:  The key language is 2.02, and in

 7    particular 2.02(b), which really controls here.

 8         Now, initially again from a 30,000-foot view, let

 9    me talk briefly about the settlement agreement.  The

10    settlement agreement expressly provided that he would

11    remain an employee and it doesn't say you're an employee

12    just for LTD purposes or anything else, Mr. Vendura

13    engaged the company when they sought to lay him off and

14    forced him to settle with him.  They paid him almost a

15    quarter of a million dollars.  This wasn't just some

16    token, "Let's get rid of the guy, let him stay on LTD"

17    settlement, it contains express terms that when

18    negotiated they say, "You'll treat me as an employee for

19    all purposes," and the settlement agreement says he is

20    entitled to all benefits as though he is an employee,

21    and if there's a conflict between the plan's terms and

22    the settlement agreement, the settlement agreement

23    controls it.

24         Now, what's important about this is that their

25    interpretation of Article 2.02, one of the ways you

1  accrue benefit services is essentially as an employee.

2  That's really what 2.02(a) is "receipt of compensation

3  from the control group for the performance of services."

4  That's the plan's way of describing an employee.  It's

5  common sense that obviously if you're still an employee,

6  you're accruing service while you're working there, and

7  the plan needs some ERISA lawyer's terminology for

8  saying that and that's what 2.02(a) is.

9       So the plan itself clearly provides that if you're

10  an employee, you're accruing benefit service while

11  you're an employee.  The settlement agreement is written

12  specifically to say "You're an employee."

13       As we laid out in our briefing, there are a number

14  of events and documents in which they continue to treat

15  him as an employee and in fact in 2008 they tried to

16  terminate him again.  He objects, says "My settlement

17  agreement says I'm an employee."  They consult with

18  their lawyers and they expressly say in a letter they

19  write back to him, "We've discussed it with our lawyers

20  and based on a legal opinion of your settlement

21  agreement, you remain an employee."

22       THE COURT:  This is all in the record?

23       MR. ROSENBERG:  It's all in the record, your

24  Honor.  And in fact that specific letter, just so the

25  Court knows, can be found in the administrative record

 1    at NG 000441.  "Legal counsel has confirmed that you do

 2    not have to retire by October 1, 2008, you will remain

 3    an active employee on long-term disability and this is

 4    due to your settlement agreement dated 7-11-03."  And so

 5    the settlement agreement and their own subsequent

 6    interpretations of it treat him always as an employee

 7    until he tries to retire in 2013.

 8           To the extent that this settlement agreement,

 9    rather that the plan, has some sort of language that

10    they construe as not allowing him to accrue service time

11    as an employee, the documents are in conflict and the

12    plan sponsor agreement in the settlement agreement, the

13    settlement agreement controls that dispute, he's an

14    employee.

15           So that even if we move beyond that, the key issue

16    here becomes Article 2, Section 2.02(b) because that

17    controls the question of if the settlement agreement

18    didn't exist at all, would he be entitled to continue to

19    accrue benefit service until his LTD expired and he

20    sought to retire in April of 2013?

21           THE COURT:  Let me make sure I follow.  As I'm

22    following your argument you're now on an alternative

23    fallback argument.  You've made your argument that he's

24    an employee, he gets all the benefits of an employee,

25    the settlement agreement says so and the settlement

1    agreement, written in light of the plan, um, references

2    the plan and is superior in these circumstances.  That's

3    what you've argued?

4         MR. ROSENBERG:  That's the first argument.

5         THE COURT:  That's right.  And if the Court

6    accepts that argument, reading the papers, um -- you

7    know, if the language says that, then it would not be

8    open to a plan administrator simply to ignore that

9    language and that's what you say is going on here.

10        MR. ROSENBERG:  Yes, your Honor.

11        THE COURT:  Okay.  Having made that argument,

12   which I understand, now you're falling back and saying,

13   "Suppose there was no settlement agreement," and I'll

14   hear you.

15        MR. ROSENBERG:  Thank you, your Honor.  That's

16   exactly right.

17        Article 2.02(b) -- Article 2.02 says you accrue

18   benefit service during any month in which any of the

19   following events occur.  So they rely on a Section (C),

20   I believe it is, in which you get 5 years of benefit

21   service while out on LTD.  But the plan says, in Section

22   2.02, you receive the service time during any time in

23   which any of the provisions are triggered, not just the

24   one they relied on, and they knew that he was raising

25   the worker's comp provision, 2.02(b), they addressed it

1    in their denial letters.

2        2.02(b) says you accrue service time while you're

3    absent without pay from work because of injury or

4    occupational disease received in the course of his

5    employment.  There's no dispute and it's established in

6    the administrative record.  In fact they reference it in

7    their reply brief to this court that he suffered

8    workplace injuries in 1994 and 1995, at least two of

9    them, one was a car accident, another was a cardiac

10   arrest.  So that piece is satisfied.  And for which he

11   receives worker's compensation disability benefits.

12       Now, he received worker's compensation disability

13   benefits for those incidents.  You will not find it in

14   the administrative record, and I'll tell you why in a

15   moment, but he received monthly worker's compensation

16   checks in '95, '96, and maybe '97, he continued to

17   receive worker's comp medical care for years afterwards

18   --

19       THE COURT:  But you're saying I'm not going to

20   find this in the record?

21       MR. ROSENBERG:  And I'm just going to give you a

22   little background, I'm going to tell you why you won't.

23   And then at some point he lumped-summed it for $400,000

24   or 500,000.  He can't recall after taxes how it worked

25   out and filing it after paying legal fees.  But in any

1   event, here's the reason it's not in the administrative
2   record.
3        The Court, I'm sure, knows exactly how internally
4   these appeals work, there's an initial submission of the
5   claim, there's an initial denial, you're allowed to
6   appeal, in fact you must appeal if you ever want to
7   bring it to court, you appeal, they deny it again, and
8   we end up in court.
9        In both their initial denial letter and their
10  final denial letter they accept the premise that he was
11  receiving worker's compensation benefits.  He's raised
12  it with them.  They don't dispute it.  In the final
13  denial letter, for instance, at NG Triple 0, 392, they
14  write, "You also began receiving worker's compensation
15  benefits as a result of two workplace injuries sustained
16  in 1994."  They said the same thing in the initial
17  denial letter, NG Triple 0, 243.
18       THE COURT:  So your point is I can take them at
19  their word?
20       MR. ROSENBERG:  You can take them at their word,
21  your Honor, but also, and it's in our brief, there's
22  actually, from NG Triple 0, 544 through to NG Triple 0,
23  549, is something called "Exhibit A, Worker's
24  Compensation Verification" received June 4th, 2013 from
25  the Northrop Grumman, Corp. benefits department.

1    Mr. Vendura was not represented by counsel when he was

2    pursuing these claims.

3         With regard to making out this worker's

4    compensation issue, he submitted what he had.  These are

5    claims, they're worker's compensation claim forms,

6    they're hearing forms, a notice of taking deposition and

7    so forth for California's worker's compensation

8    procedures.  He submitted what he had.  They never

9    raised any dispute.  They didn't say it in the initial

10   denial letter, which would have allowed him to

11   supplement it if they were going to dispute it, they

12   didn't raise it in the final denial letter, they didn't

13   investigate it themselves based on the administrative

14   record, they just accepted it.

15        *Glista*, and this court's -- rather the First

16   Circuit's decision earlier this year in *Dutkewych,*

17   D-U-T-K-E-W-Y-C-H, *vs. Standard Insurance Company*, 781

18   F.3d 623, all establish that you can't come up with a

19   post hoc rationalization as a plan sponsor after the

20   denial letter and after the administrative record is

21   closed because you've already cut off the participant's

22   opportunity to respond to your position and your

23   objections.  You can't raise a new position in court.

24   It's essentially the same as going up on appeal.

25   They're bound to the conclusion in those denial letters

1   that there was worker's compensation benefits.

2       Now, at different times they argue that, um, he

3   had to have been receiving worker's compensation

4   disability benefits during a given month, but it doesn't

5   say that in the plan anyway, it just says "absence from

6   work because of the injury received in the course of

7   employment and for which he receives worker's

8   compensation disability benefits."  As long as you

9   receive it, it doesn't matter when, then you've

10  satisfied the plan.

11      They say that it's a loophole, that the plan

12  administrator enforces it this way by avoiding it.

13  There's no evidence the plan administrator has ever

14  gotten this before or treated it this way.  This is

15  simply what they're saying.  Now they may say, "We have

16  discretion and it's reasonable," but even under

17  arbitrary and capricious review and the cases we cite in

18  the our brief, the First Circuit makes clear that you

19  still are tied to the language.  And there's one great

20  case in which the First Circuit references, um, that you

21  have to put aside skillful lawyering, that even if

22  skillful lawyering can make night day, you still have to

23  stick to the plan terms.  That provision that they

24  interpret it this way to avoid a loophole isn't written

25  anywhere in here and there's no evidence they've ever

1    done it that way in the past anyway.

2          Further --

3          THE COURT:  Well, is that last point demonstrated

4    in the record?

5          MR. ROSENBERG:  Actually it's demonstrated by the

6    absence of it.  They say --

7          THE COURT:  Well, you say because they don't argue

8    that "This has been our longstanding practice" and cite

9    examples, that I'm to infer that this is the first time

10   they've ever taken that position?

11         MR. ROSENBERG:  I believe that's exactly right, I

12   believe it is devoid of evidence that they've ever

13   thought of this before.

14         THE COURT:  I see.

15         MR. ROSENBERG:  And I will point out that this

16   provision isn't a loophole, it makes complete sense,

17   that you would choose -- or at least it makes as much

18   sense to believe, as a plan sponsor motivating tens and

19   hundreds and possibly thousands of employees around the

20   world, that you might favor an employee who's out on LTD

21   because of a workplace injury over people who are out

22   for other reasons, and that's all this provision does.

23         And so what about the time limit?  Well, the time

24   limit is in a second call, "Provided however that

25   service credit shall be limited to a maximum of 12

1    months unless the participant has met the eligibility

2    requirements for receiving long-term disability

3    benefits."  There's no dispute he met those requirements

4    and he received long-term disability until 2013.  So the

5    time limit is gone.  So factually on the administrative

6    record he satisfies all of the provisions of 2.02(b) for

7    accruing benefit service time the whole time that he's

8    out and the only time limitation contained within it

9    factually isn't applicable.

10        And that's basically our argument, your Honor.

11        THE COURT:  I understand it and I thank you.  This

12   has been extremely helpful and as I indicated I would, I

13   take the matter under advisement.  Thank you.

14        (Ends, 10:00 a.m.)

15

16        C E R T I F I C A T E

17

18        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

19   do hereby certify that the foregoing record is a true

20   and accurate transcription of my stenographic notes

21   before Judge William G. Young, on Thursday, May 28,

22   2015, to the best of my skill and ability.

23

24   /s/ Richard H. Romanow 06-04-15
     _____
25   RICHARD H. ROMANOW    Date